**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John H. HARRIS, Defendant-Appellant.**

**No. 74–1981.**

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1975.

Decided Aug. 5, 1975.

James F. Flanagan, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Robert L. Herbst, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before McALLISTER, Senior Circuit Judge,[1] and SWYGERT and STEVENS, Circuit Judges.

SWYGERT, Circuit Judge.

Numerous issues are raised in this appeal but the most substantial ones concern the question of what essential elements must be proved to establish a violation of 26 U.S.C. § 7212(b).[2]

---

1. The Honorable Thomas F. McAllister, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

2. 26 U.S.C. § 7212(b) reads:

 (b) Forcible rescue of seized property.— Any person who forcibly rescues or causes to be rescued any property after it shall have been seized under this title, or shall attempt or endeavor so to do, shall, excepting in cases otherwise provided for, for every such *offense, be fined not more than* $500, or not more than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than 2 years.

As of April 30, 1973 defendant John H. Harris had a delinquent federal tax account in an amount in excess of $12,000. Luther N. Scott, an Internal Revenue Service officer, was assigned to collect the account. On May 4, 1973 Harris supplied financial information from which Scott prepared a financial statement, which Harris signed. The statement failed to disclose that Harris owned a 1973 Chevrolet van in which he had $1500 in equity.

Upon discovery of Harris' ownership of the van, Scott and his supervisor decided to take enforcement action against Harris' assets. On October 25, 1973 revenue officers Scott and Kenneth Schons went to Harris' place of business. Scott presented Harris with a levy and explained that the levy authorized Scott to seize a 1968 Pontiac Firebird automobile owned outright by Harris, tow it away, store it, and eventually sell it and apply the proceeds against Harris' tax liability. Harris responded by telling the officers that no one was going to take his car from him.

The revenue officers, followed by Harris, then went out to the street where Harris' car was parked. Officer Scott asked Harris what he would do if the car was seized and Harris replied that he would get into it and drive it away. Scott told Harris he would merely get himself into more trouble because once the warning stickers were placed on the car it would then be under federal custody. Harris replied that he did not care. Officer Schons then placed the stickers, duly signed and dated, on the car.

Later that same day John W. Bedford, a criminal investigator for the Internal Revenue Service, went to Harris' place of business. He did not see the seized automobile in the vicinity. He proceeded to Harris' residence where he located the car, with the warning stickers removed, in the back of the driveway.

On October 30, 1973 Harris was arrested. In response to the arresting officer's

question concerning the location of the automobile, Harris stated that it was in the State of Illinois. On November 12, 1973 Harris informed the federal authorities that the car was in the parking lot of the Internal Revenue Office in Skokie, Illinois and the car was found there without any warning stickers.

Harris was then tried and convicted by a jury of forcibly rescuing his seized automobile in violation of 21 U.S.C. § 7212(b). He was sentenced to forty minutes in the custody of the United States Marshal.

I

 Harris' first contention is that the presentation of hearsay evidence to the grand jury effectively deprived him of his right to be charged by indictment. The only witness who testified before the grand jury was criminal investigator Bedford.

It is clear in this circuit that an indictment is not improper merely because it is based on hearsay. *United States v. Wilkinson,* 513 F.2d 227 (7th Cir. 1975). An indictment based on hearsay might possibly be subject to dismissal if there is a high probability that no indictment would have been returned had there been eyewitness' testimony or if the grand jury had been deceived as to the type of testimony it received. *United States v. Estepa,* 471 F.2d 1132, 1137 (2d Cir. 1972). We find neither of these special exceptions in this case. The grand jury heard no false information and we do not think that revenue agent Scott would have given any additional relevant testimony that might have resulted in a refusal to indict. Moreover, the transcript of the grand jury proceedings shows that Bedford plainly indicated the secondhand nature of portions of his testimony.

II

 Harris attacks the sufficiency of the indictment[3] on numerous grounds.

3. The indictment charged that:

On or about October 25, 1973, at Evanston, in the Northern District of Illinois, Eastern Division,

JOHN H. HARRIS

defendant herein, did forcibly rescue and cause to be rescued property seized by the Internal Revenue Service, Department of the

First, he claims that the indictment fails to charge the necessary mental state. Harris contends that a section 7212(b) offense is a specific intent crime. We do not agree. A specific intent to permanently defeat the seizure of the property need not be shown to establish a section 7212(b) violation. The statute does not even use the term "willfully." To satisfy the mental state requirement of section 7212(b) no more need be charged or proved other than that the defendant purposefully, as opposed to mistakenly, retook the property knowing that it had been seized by the Internal Revenue Service.[4] *Cf. Finn v. United States,* 219 F.2d 894, 899–901 (9th Cir. 1955). The evidence was sufficient to support this element.

■ The indictment, however, did not specifically charge that Harris had taken the property "knowing" that it had previously been seized. Harris argues that the failure to include at least the knowledge requirement constitutes a fatal defect in the indictment. The Government's response is that this knowledge requirement is sufficiently set forth by use of the term "rescue," since, as noted by the district judge, inherent in the concept of "rescue" is the notion that the defendant knew the property had been seized. While we think it would be better to allege specifically the knowledge element, we agree with the Government that the use of the term "rescue" is sufficient for purposes of the indictment. If one "rescues" property, he does not merely take it, but he takes it with the realization that he is removing it from governmental custody. *Cf. United States* v. *Willis,* 515 F.2d 798 (7th Cir. 1975).

■ Harris also claims that the indictment is defective since it does not contain an allegation that the seizure was lawful. We find that this element is sufficiently covered in the indictment. The statute refers to property "seized under this title." All that need be proved in this regard is that the property had been seized by persons authorized to do so by virtue of their office. Unlike a civil suit attacking a seizure, the legality of the underlying lien or assessment is not relevant in a section 7212(b) criminal prosecution. *United States v. Oliver,* 421 F.2d 1034, 1036 (10th Cir. 1970); *United States v. Scolnick,* 392 F.2d 320, 326 (3d Cir. 1968). If the rule were otherwise it would "encourage violent self-help where civil remedies are admittedly available." *United States v. Scolnick,* 392 F.2d at 326. The indictment charges that the property had been "seized by the Internal Revenue Service, Department of Treasury, under Title 26, United States Code . . . ." This language is a sufficient allegation of lawfulness.[5]

Harris' final challenge to the indictment is that it failed to sufficiently state what acts constituted the "rescue." We see no possibility that he was prejudiced in preparing his defense or that the grand jury indicted on the basis of facts other than those relied upon by the petit jury since the indictment sets forth the date of the alleged forcible rescue. A motion for a bill of particulars could have been filed, though apparently this was not done. The indictment satisfied the requirements of Fed.R.Crim.P. 7(c)(1).

### III

Harris' next contention is that the district court incorrectly defined the term "forcibly." The instruction given the jury stated that the term was "not limited to proof of force exerted against per-

---

Treasury, under Title 26, United States Code, to wit:
 One (1) 1968 Pontiac Firebird, two door hardtop, vehicle identification number 223378UI25246;
In violation of Title 26, United States Code, Section 7212(b).

**4.** Given our interpretation of the statute, there was obviously no error committed in refusing to give a specific intent instruction.

**5.** The instructions also were adequate in this regard. The jury was instructed that it must find that the property had been "seized by the Internal Revenue Service" and had been in "the lawful custody of the Internal Revenue Service" when rescued.

sons, but rather embraces any force that enables the defendant to rescue or recover [the] property . . ..'' Harris argues that the instruction should have been limited to force exerted against persons or property protecting the seized item.

The district court's instruction was based on *United States v. Scolnick*, 392 F.2d 320 (3d Cir. 1968). In *Scolnick* the force used was the breaking of a bank window as a diversion, the removal of the Internal Revenue Service seal from a safe deposit box, and the removal of the box and its contents from the bank. This was held to be sufficient force. But Harris maintains that *Scolnick* at least involved force beyond that inherent in the rescue itself. The instruction given in this case did not even require that much.

■ We hold that the instruction given was correct. One who recovers unguarded property that contains no seizure stickers, knowing that such property was seized, rescues such property, but does not do so forcibly. If any type of force is used, however, then there is a forcible rescue. The district court properly informed the jury that the force need not be directed at an individual guarding the property. The statute is intended to protect seized property and surely Congress did not envision that a guard would have to be posted to achieve that protection. In the instant case the force used was the removal or "destruction" of the warning stickers placed on the automobile. These stickers were the formal indication that the car had been seized. Their removal by force was sufficient to support a finding of forcible rescue.

## IV

■ Various trial errors are also alleged. First, there is the assertion that it was a prejudicial abuse of discretion not to grant the defendant's motion for a continuance. In light of the facts that the trial occurred almost nine months after indictment, almost a week's notice of trial was given, the trial lasted only one day and all of the defendant's witnesses were heard, we deem this contention frivolous.

■ Second, Harris claims that his conviction should be reversed because of certain prosecutorial misconduct. Specifically, the complaint centers on the Government's elicitation and attempted elicitation of an allegedly prejudicial and irrelevant threat made by the defendant. On direct examination revenue officer Scott testified that Harris had said: "Nobody takes my car, or my business or I'll blow your fuckin' head off." This answer was stricken. Moreover, the district judge, out of the presence of the jury, diligently warned the prosecutor about eliciting from revenue officer Schons testimony concerning the exact threat made by Harris and there was no such testimony by that witness. On cross-examination of the defendant, however, the Government was allowed to ask about the exact language of his threat.

We do not find that Harris suffered any serious prejudice from any illegitimate attempts to elicit this testimony. Scott's answer was promptly stricken. No harmful answer was even given by Schons because of the trial court's sensitivity to the problem.

The only serious issue in this regard is the cross-examination of Harris which the trial court allowed. It was proper to question Harris about the language he used, since on direct examination he said that he had "implied" that no one would take anything from him under those circumstances. The Government was entitled to clarify this point.

■ Finally, Harris claims that the district court abused its discretion in ordering that the entire testimony of the defendant be reread to the jury as opposed to only those portions relating to the jury's question. The alleged prejudice is that the jurors were told, in effect, that the key to the case was in another part of the testimony and, in addition, the part they wanted to hear was "lost" in the middle.

A trial judge has wide discretion in determining whether testimony should

be reread to the jury upon request. *United States v. DePalma,* 414 F.2d 394 (9th Cir. 1969). We find no abuse of discretion in ordering the entire testimony reread. It is important to note that it was the testimony of the defendant, not a Government witness, that was reread. The issue in which the jury was interested was covered on both direct and cross-examination and a written transcript had not yet been prepared. Moreover, the testimony took only about half an hour to read. We do not believe the jury was misled and find no abuse of discretion in ordering the entire testimony reread. *Cf. United States v. Tager,* 481 F.2d 97, 101 (10th Cir. 1973).

The judgment of the district court is affirmed.