**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David SPICER, Defendant-Appellant.**

No. 76–3049

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

March 2, 1977.

James M. Wallace, Marianna, Fla. (Court-appointed), for defendant-appellant.

Nicholas P. Geeker, U. S. Atty., Pensacola, Fla., Clifford L. Davis, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Without a Jolly Roger from the mast, this is non-violent contemporary piracy from, of all things, the United States Marshal. This comes from Defendant Spicer's appeal from a conviction for violation of 18 U.S.C.A. § 2233,[1] for forceably rescuing or dispossessing the Marshal from his lawful custody of a seagoing tug. Although Spicer raises a variety of claims of trial court error, they can all be narrowed to one question—whether force, threats or other intim-

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

1. 18 U.S.C.A. § 2233 provides:
   § 2233. *Rescue of seized property*
   Whoever forcibly rescues, dispossesses, or attempts to rescue or dispossess any property, articles, or objects after the same shall

have been taken, detained, or seized by any officer or other person under the authority of any revenue law of the United States, or by any person authorized to make searches and seizures, shall be fined not more than $2,000 or imprisoned not more than two years, or both.

idation against the *person* of a duly authorized Federal officer is an essential element of the crime set forth in 18 U.S.C.A. § 2233? We answer that question in the negative. Affirmance of the conviction follows.

Spicer was the owner and operator of the Tug Atlas. On April 11, 1975, a Deputy United States Marshal served a summons and warrant of arrest on the Tug in the Panama City Marina at St. Andrews Bay, Florida pursuant to a writ issued by the District Court in a civil admiralty proceeding against the owner *in personam* and the vessel *in rem*. Spicer, with his consent, was appointed custodian and keeper of the Tug [2] and was advised of his duties and responsibilities. Chief among these was that the Tug could not be moved without prior authorization from the Court.

In early August 1975, Spicer bought provisions for a boat in Panama City and paid for them with an insufficient funds check. On Sunday, August 10, 1975, people were observed by the dock master loading victuals and supplies in sacks onto the Tug. Spicer was recognized as among those loading the Tug. Sometime between that Sunday afternoon and Tuesday, when the dock master returned to work, the vessel had

been removed without paying any docking fees. On August 12, 1975, the Marshal's office became aware that the vessel had been removed and it was discovered that the removal took place without any authorization. In October 1975, Spicer signed a crew on in New Orleans under official shipping articles [3] for the Tug for a voyage from New Orleans to Belize, Central America. Ultimately, the Tug was found abandoned in New Orleans.[4]

Defendant was indicted on one felony charge of violation of 18 U.S.C.A. § 2233. The indictment charges that on or about August 10, 1975, David Spicer did unlawfully, willfully, and forceably rescue and dispossess a certain tug, Atlas, from the United States Marshal after it had been seized pursuant to a warrant issued by a Federal District Judge pursuant to a civil case. The jury found him guilty and Spicer was sentenced to 18 months imprisonment.

Spicer argues that the Trial Court committed reversible error by (i) denying his motions for acquittal, (ii) refusing to give his requested jury charge that force against a duly authorized officer is an essential element of the crime set forth in 18 U.S.C.A. § 2233, and (iii) charging the jury that force was not an essential element of this crime.[5] In its essence, defendant

2. The deputy marshal who served the warrant on Spicer's Tug testified that it was a normal procedure of the Government to appoint the owner as master and custodian of the vessel, since it was necessary to have someone as master who had good knowledge of the vessel. This would also reduce or eliminate daily costs which would be borne by the litigants.

3. As all, including the master of the tug, knew, shipping articles are the contract between the master and the seaman. The articles set forth the details of the working relationship between master and crew during a particular voyage. For a voyage from a port in the United States to a foreign port, shipping articles are required. 46 U.S.C.A. § 564. On vessels under enrollment (not registry) articles have to be signed for coastal voyages. 46 U.S.C.A. § 574.

4. There was credible testimony during the trial that the voyage to Central America took place before the Tug was abandoned in New Orleans.

5. The trial judge instructed the jury, in pertinent part:
"The offense of this possession under the statute does not require the use of force."

"The essential elements of the offense charged which the government must prove are:
1. That, at the time that tug ATLAS was taken, it had been seized by one authorized by law to do so.
2. That the defendant was aware of the seizure and of the fact that removal of the vessel from custody was forbidden.
3. That the defendant willfully removed the vessel from custody, that is, that he dispossessed the appropriate authorities of dominion and control over the vessel."

\* \* \* \* \* \*

"In this case, the defendant here, David Spicer, was appointed as substitute custodian of the vessel after its seizure by the United States Marshal. I instruct you that, if it is proven beyond a reasonable doubt that David Spicer was instructed as to movement of the vessel and willfully moved the vessel contrary to his instructions, that conduct could constitute dispossessing the Marshal of custody."

claims that there is only one issue presented by this appeal—whether "force, threats, or other intimidation against the person of a duly authorized federal officer [is] an essential element of the crime set forth in Title 18, U.S.Code, Section 2233?"

Defendant relies primarily upon the hoary case of *United States v. Ford*, D.N.C., 1887, 33 F. 861, a case dealing with the predecessor statute to § 2233 and the only reported case ever to have considered this statute. The reported case consists solely of the jury charges by the Court in a case involving an indictment for an attempt to rescue property under seizure. There, Government agents seized unstamped liquor from the premises of the defendant. When the defendant returned to find the agents collecting his liquor, he threatened to shoot the officers, but the officers restrained the defendant before he was able to get his gun.

In *Ford*, Defendant was charged with attempting to rescue property lawfully seized by United States agents. The crime consisted of "the forceable retaking of property out of the hands of officers of the law who have it in legal custody. An attempt to rescue is a forceable, but unsuccessful, effort to accomplish a rescue." *Id.*, at 863.

In his jury instructions, the trial judge in *Ford* remarked:

"Forcible obstruction or hinderance does not necessarily mean actual violence to the person of an officer. Threatening language, or conduct calculated and intended to intimidate prudent, cautious, and ordinarily brave men, and make them desist from the performance of official duty from well-grounded apprehension of serious personal harm, is forcible conduct, in contemplation of law, although unsuccessful in its aim and purpose. A person can apply opprobrious epithets to officers, and use language of vehement denunciation, but if he does not, by acts or words, manifest a present purpose of personal violence and injury, he is not guilty of forcible obstruction or hinderance of legal authority."

*Id.*, at 862.

Under this rule of law, the question for the jury to resolve was stated to be "whether the language and conduct of the Defendant was, under all the circumstances, intended and well calculated to intimidate the officers, and prevent them from carrying off the unstamped spirits which had been legally seized, so that by due proceedings they might be condemned as forfeited to the government." *Id.*, at 863.

Defendant argues that this case provides the correct meaning of "forceably" in § 2233—force or threats against the *person* of a duly authorized Federal officer. However, a careful reading of *Ford* suggests that the real question in that case was not whether force against the person of a duly authorized Federal officer is an essential element of the crime in every case, for, in *Ford*, there was no question but that the defendants threatened to use force against the officers who were attempting to seize his property. Instead, the Court, by its instructions, was attempting to explain to the jury how they should handle defendant's affirmative defense that his forceful conduct was not intended to impede the officers from seizing his property, but resulted from a sudden fit of passion caused by an apparent injury to his mother from one of the officers present. Thus, the real issue in *Ford* was whether or not the conduct of the defendant constituted a threat of force directed against the officers to prevent their seizure of his property or whether it constituted a sudden impulse of passion excited by an apparent injury to the defendant's mother. More to the point, *Ford*, in its unessential dicta, is not binding on us as precedent, and we refuse to follow it because we disagree with the rule of law stated in the jury instructions we have quoted.

In Defendant's second argument, he contends that a comparison of 18 U.S.C.A. § 2232,[6] the misdemeanor statute, with

---

**6.** 18 U.S.C.A. § 2232 provides:

§ 2232. *Destruction or removal of property to prevent seizure*

Whoever, before, during, or after seizure of any property by any person authorized to make searches and seizures, in order to pre-

§ 2233, the felony statute, reveals that Congress must have required a greater degree of moral turpitude in the felony statute. This greater degree of moral turpitude in the felony statute is provided, Defendant claims, by an implicit requirement in § 2233 that there be actual force or violence against the duly authorized federal officer, thereby warranting the imposition of a greater punishment as a felony. If we do not so read the statute, Defendant suggests, the Government would have the unbridled discretion to seek an indictment under either § 2232 or § 2233, for the same act, even though conviction under one is a felony and conviction under the other is a misdemeanor.

In response the Government argues that the construction given to the nearly identical language of 26 U.S.C.A. § 7212(b)[7] should be applied to 18 U.S.C.A. § 2233. Here, the Government relies primarily on two cases—*United States v. Owens*, 4 Cir., 1975, 511 F.2d 1205, and *United States v. Scolnick*, 3 Cir., 1968, 392 F.2d 320.

In *United States v. Owens, supra,* defendant was charged with two counts of violating § 7212(b). The first count was for endeavoring to intimidate and impede by threat or force officers of the IRS during the performance of their official duties. Count II charged the Defendant with forceably rescuing certain vehicles which had been seized by agents of the IRS. The jury returned a finding of not guilty as to Count I and guilty as to Count II, and it is from that finding that the Defendant appealed. The short per curiam opinion by the Fourth Circuit stated that the "evidence presented against Owens was circumstantial. However, we conclude that it was sufficient for the jury to find beyond a reasonable doubt that Owens had committed the crime. * * * We find no cause for reversal in Owens' other assignments of error." *Id.* at 1206.

The facts underlying *Owens* were the following.[8] The defendant's vehicles had been levied upon by Revenue Officers. A sticker was placed on the windshield of several trucks and the defendant was told that the vehicles were under Government seizure. When the defendant saw what the officers were doing, he ran up to them, stuck his hand into his rear pocket as if he had a gun there, and said, "I don't want to kill anybody, but you are taking everything I've got and I don't see that I have anything to lose." The revenue agents thereupon departed the area as they had been instructed to do when threatened or intimidated while conducting their official business. The officers returned the next day only to find that all the vehicles under seizure had been removed. This removal was made in the absence of the Revenue Officers and without any force or intimidation directed toward them *at that time.*

The Court's affirmation of defendant's conviction under Count II, which covered only the forceable rescue of the vehicles during the *absence* of the IRS agents, indicates that the Fourth Circuit, as we divine its decision, does not require any showing of force, threats, or intimidation against the *person* of a duly authorized revenue agent as an essential element of § 7212(b).

In *United States v. Scolnick, supra,* the IRS seized a safe deposit box by serving a

vent the seizure or securing of any goods, wares, or merchandise by such person, staves, breaks, throws overboard, destroys, or removes the same, shall be fined not more than $2,000 or imprisoned not more than one year, or both.

7.  26 U.S.C.A. § 7212(b) provides:

§ 7212. *Attempts to interfere with administration of internal revenue laws*

(b) *Forcible rescue of seized property.*— Any person who forcibly rescues or causes to be rescued any property after it shall have been seized under this title, or shall attempt or endeavor so to do, shall, excepting in cases otherwise provided for, for every such offense, be fined not more than $500, or not more than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than 2 years.

8.  The statement of facts is taken from the Government's brief in *Owens*, reproduced in the appendix of the Government's brief in this case.

Notice of Levy, Notice of Federal Tax Lien and Notice of Seizure on the bank in which the box was located. A seal was placed upon the box warning anyone attempting to open it that it was seized for federal income tax purposes. The key to the box was turned over to the IRS.

Before the IRS was able to take actual physical possession of the box,[9] the defendant and his confederates began a plan designed to remove the contents of the safe deposit box. The defendants first rented another safety deposit box in the bank in order to gain admission to the vault. Several days later, by hurling a rock through the window of the bank, they were able to create a disturbance which allowed one of them to seize the bank's master key. By using it in conjunction with the duplicate key which Defendant had retained to assist the co-conspirator, the co-conspirator was able to carry from the bank the entire safety deposit box which had been seized by the IRS.

The Third Circuit held that these facts were sufficient to sustain a conviction under § 7212(b)—"the essential elements required by the statute to constitute the offense are seizure and rescue." *Id.*, at 326. The Court emphasized further that "forceable rescue, as that term is used in 26 U.S.C. § 7212(b), is not, in our opinion, limited to proof of force exerted against *persons*. Rather, we think the statute embraces the force here proved, viz., the breaking of the bank window, the removal of the [Internal Revenue] Service's seal on the box and the removal of the safe deposit box and its contents from the bank." (Emphasis added). *Id.*, at 327.

We read both *Scolnick* and *Owens* to hold that proof of force exerted against *persons* is not an essential element of § 7212(b). From the nearly identical language and the identical purposes of the two statutes, we also conclude that the construction given to the term "forceable rescue" in § 2233

should be the same as the definition given to that term in § 7212(b).

Spicer, under an order from the Marshal to which he willingly consented, ceased to be the custodian of this vessel. He not only breached the trust imposed on him by the United States Marshal but he asserted a dominion over the tug utterly inconsistent with that trust and the preemptive writ issued by the District Court. The force used here was in navigating the tug under its own power and under Spicer's direction with the purpose to use it in a manner that defied and frustrated the warrant of seizure. This was not an innocuous harbor movement but a purpose upon the master (defendant) to put the tug to work outside the harbor on commercial uses wholly inconsistent with its judicially declared state of immobility and beyond the jurisdictional limits of the District Court. This force was sufficient to uphold Spicer's conviction under 18 U.S.C. § 2233.

Anticipating this natural and logical conclusion, Defendant asserts that our holding today will allow the Government absolute discretion to indict Defendants for the same act under either § 2232 or § 2233, even though conviction for one will result in only a misdemeanor while conviction for the other will result in a felony.

We conclude, however, that our definition of § 2233 is not improper and does not give the prosecutor unfettered discretion beyond that which he already has. *See, e. g., United States v. Cox,* 5 Cir., 1965, 342 F.2d 167, *cert. denied,* 1965, *sub nom., Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700.[9a] The propriety of our interpretation is supported by *United States v. Bishop,* 1973, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941. In that case, as a result of having deducted various nondeductible items on his income tax returns, the defendant was prosecuted under 26 U.S.C.A. § 7206(1), which makes it a felony for a person to

---

**9.** The defendant had secured a temporary injunction prohibiting the bank from turning over the box or its contents to the IRS.

9a See also *United States v. Melvin,* 5 Cir. 1977, 544 F.2d 767; *United States v. Brewer,* 4 Cir. 1975, 528 F.2d 492.

"willfully" make and subscribe, under penalties of perjury, any return, statement, or other document which he does not believe to be true and correct as to every material matter. The facts disclosed that the only real issue in the case was whether or not his transgressions were "willful" under the meaning of the statute. The trial judge instructed the jury under § 7206(1), but refused to grant a lesser-included-offense instruction under 26 U.S.C.A. § 7207, which makes it a misdemeanor for any person "willfully" to deliver or disclose to the Secretary of the Treasury or his delegate any list, return, account, statement, or other document known by him to be fraudulent or to be false as to any material matter. On appeal to the Supreme Court, the question presented was "the meaning of the critical word 'willfully' as it is employed in these two successive statutes. Is its meaning the same in each, or is the willfulness specified by the misdemeanor statute, § 7207, of somewhat less degree than the felony 'willfulness' specified by § 7206?" 412 U.S. at 348, 93 S.Ct. at 2011.

Defendant, relying on language from *Spies v. United States*, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, and *Abdul v. United States*, 9 Cir., 1958, 254 F.2d 292, argued that the word "willfully" in the misdemeanor statute should be construed to require less scienter than the same word in the felony statute. His argument was the same as that urged by Defendant here—that the Court should be unwilling to presume that Congress intended to enact both felony and misdemeanor provisions which overlap in this important area. In a similar vein, defendant argued that the existence of a hierarchy of tax offense strongly suggests that willfulness in a tax misdemeanor

is of a different quality from that required for a felony.[10]

The Supreme Court rejected Defendant's arguments: "We conclude that it is proper and correct for the District Court to refuse the lesser-included-offense instruction. In our view, the word 'willfully' has the same meaning in both statutes." In rejecting Defendant's argument that Congress could not have intended to enact both felony and misdemeanor provisions which overlap, the Court noted that the "critical difficulty for respondent is that the two sections have substantially different express terms." 412 U.S. at 357, 93 S.Ct. at 2015. Thus, the Court recognized that these "differences in the respective applications of §§ 7206(1) and 7207 provides solid evidence that Congress distinguished the statutes in ways that do not turn on the meaning of the word 'willfully.' * * * Thus the word 'willfully' may have a uniform meaning in the several statutes without rendering any one of them surplusage." 412 U.S. at 358, 93 S.Ct. at 2016. Thus, the Court concluded, "the word 'willfully' has the same meaning in § 7207 that it has in § 7206(1).[11]

In the case now before us, we reject Defendant's argument on the same ground relied upon by the Supreme Court in *Bishop* —that 18 U.S.C.A. § 2232 and § 2233 have substantially different express terms, so that our interpretation of "forceably" in § 2233 does not render § 2232 mere surplusage. As the titles to the two sections indicate, § 2233 is exclusively concerned with the rescue of property *after* the same has been seized by an officer under the authority of the revenue laws of the United States, while § 2232 is concerned primarily with the destruction or removal of property to prevent the seizure from occurring.[12] These

---

**10.** A summary of Defendant's arguments in *Bishop* can be found in 36 L.Ed.2d at 1156.

**11.** In *United States v. Pomponio*, 1976, —— U.S. ——, 97 S.Ct. 22, 50 L.Ed.2d 12, the Supreme Court held that, in the context of 26 U.S.C.A. § 7206(1)—and thus, from *Bishop,* the related tax statutes as well—the term "willfully" simply meant a voluntary, intentional violation of a known legal duty, and did not require proof of any evil motive.

**12.** Section 2233 is thus akin to the common law crime of rescue (*see* 77 C.J.S. *Rescue* §§ 1–7, 14), which was either a felony or misdemeanor at the common law, while § 2232 is most like the common law crime of obstruction of justice (*see* 67 C.J.S. *Obstructing Justice* §§ 2, 4), which, at common law, was indictable generally as a misdemeanor (*see* Id., § 1).

**1234**

are substantially different statutes with substantially different express terms,[13] which is sufficient to support our interpretation of the word "forceably" in § 2233 under *Bishop*.

There was no error in the jury instructions or in the refusal to grant a directed motion of acquittal.

AFFIRMED.

---

**13.** Without examining at this time exactly what § 2232 reaches, we are confident of our construction of § 2233 and, as in *Bishop* and *Pomponio*, the apprehension of wide open prosecutorial discretion is unavailing.

