UNITED STATES of America,
Plaintiff–Appellee,

v.

Grady Lee SANDERS,
Defendant–Appellant.

No. 88–5052.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 1, 1988.
Nov. 28, 1988.

---

1. Mr. Arvinger also sued for retaliatory discharge under § 704. This claim is not presently before us.

Michael W. Patrick (Haywood, Denny, Miller, Johnson, Sessoms & Patrick, Durham, N.C., on brief), for defendant-appellant.

John Warren Stone, Jr., Asst. U.S. Atty. (Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., Becky M. Strickland, CLA Paralegal Specialist, on brief), for plaintiff-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and BOYLE, District Judge for the Eastern District of North Carolina, sitting by designation.

PHILLIPS, Circuit Judge:

Grady Lee Sanders challenges his jury conviction for forcible "rescue" of property seized by the IRS. Because we find that the trial court erred to Sanders' prejudice in refusing to admit into evidence a deposition from a key witness, we reverse.

## I

Sanders was convicted in December 1987 for forcibly rescuing the previous July two of his possessions, a Cadillac car and the battery of a Ford truck (no attempt was made to rescue the truck itself), that had been seized by the IRS on April 9, 1987, to collect a civil penalty assessed against Sanders for the nonpayment of withholding taxes by his company, SAC, Inc. It is uncontested that Sanders himself rescued the items, which had been kept on the premises of a National Guard maintenance shop. A National Guard employee saw Sanders remove the truck battery during regular working hours on July 27, 1987, asked Sanders what he was doing, but did not tell Sanders not to remove the battery, nor did he attempt to prevent Sanders' action. Sanders testified that he removed only the battery because it needed to be recharged before the truck would operate. There is no evidence that Sanders used any force against the Guard employee to complete his rescue of the battery. The employee called an IRS agent, who on arrival at the yard the next day saw that the Cadillac had been taken also. It is unclear how long the Cadillac had been removed; the most recent confirmed date of its appearance was June 30. Sanders testified that he had rescued the car several days earlier during the facilities' regular operating hours. Both vehicles had been kept in a fenced compound with a gate open during the business day. Sanders admits taking the battery and vehicle and also admits removing the warning stickers that had been placed on the vehicle when it was seized. The Cadillac was later recovered by the IRS on August 9, while it was sitting in open view in front of Sanders' home.

Sanders claims his repossession was lawful. Just after the original IRS seizure of his vehicles, Sanders spoke with an IRS agent about filing for bankruptcy in order to have the vehicles returned; the agent told him that the filing would not nullify a pre-bankruptcy seizure and that he would need a separate order from the bankruptcy court to have the vehicles returned. In late April Sanders employed attorney Henry Gamble to go ahead with the bankruptcy proceedings and to make the proper motion to have the vehicles released. Sanders claims that he went to pick up his vehicles after hearing from his attorney that the necessary motion to release the vehicles had been filed with the bankruptcy court. (It later turned out that the motion had not been filed.) Sanders also claims that he saw the warning stickers on the vehicles when he went to pick up the battery and Cadillac and was told by his attorney, whom Sanders telephoned, that under the circumstances it was legal to repossess the vehicles even with the stickers on them. Sanders' attorney denied that this telephone conversation occurred.

Sanders was indicted for rescue of both the truck battery and the Cadillac, was convicted by a jury on both counts, and sentenced to a term of active imprisonment of eighteen months. This appeal followed.

## II

This case presents at the outset an issue of first impression for this court: the proper interpretation of the term "forcible rescue" as found in 18 U.S.C. § 2233. This section provides:

> Whoever forcibly rescues, dispossesses, or attempts to rescue or dispossess any property, articles, or objects after the same have been taken, detained, or seized by any officer or other person under the authority of any revenue law of the United States, or by any person authorized to make searches and seizures, shall be fined not more than $2,000 or imprisoned not more than two years, or both.

It appears that to date only two courts have interpreted this provision. *See Unit-*

ed States v. Spicer, 547 F.2d 1228 (5th Cir.1977); United States v. Ford, 33 F. 861 (W.D.N.C.1887). The Spicer court analogized construction of a § 2233 violation to violation of the nearly identical provisions of 26 U.S.C. § 7212(b), see 547 F.2d at 1231–32, and we take that course here. Section 7212(b) provides:

> Any person who forcibly rescues or causes to be rescued any property after it shall have been seized under this title, or shall attempt or endeavor so to do, shall, except in cases otherwise provided for, for every such offense, be fined not more than $500, or not than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than 2 years.

Again only a small number of federal circuit courts have interpreted this statute. See United States v. Hardaway, 731 F.2d 1138 (5th Cir.1984); United States v. Main, 598 F.2d 1086 (7th Cir.1979); Spicer, 547 F.2d 1228; United States v. Harris, 521 F.2d 1089 (7th Cir.1975); United States v. Owens, 511 F.2d 1205 (4th Cir.1975) (per curiam); United States v. Scolnick, 392 F.2d 320 (3d Cir.1968); see also Annotation, What Constitutes "Forcible Rescue" of Seized Property Under 26 USCS § 7212(b), 29 ALJ Fed. 561 (1976 & 1988 Supp.).

The district court held that the three elements of a § 2233 violation are: (1) the property, when first seized by the government, was taken by a government official authorized to do so; (2) the defendant was aware of the seizure and that removal of the property from government custody was unlawful; and (3) "the defendant forcibly removed the property from custody, that is, he dispossessed the appropriate authorities of dominion and control over the property, and such act was done willfully." Joint Appendix at 179.

The principal issue before us is the third element, which rests on the legal interpretation of the statutory term "forcibly rescues."[1] In considering this element, we must decide what § 2233 means by requiring that a rescue be effected with force. Courts have uniformly held, and no party questions here, that forcible rescue is not restricted to force exerted against persons. See Hardaway, 731 F.2d at 1140 (citing cases). In a number of the cases decided, determination that force has been used is rather obvious: trespass onto a car dealer's lot after regular business hours and removal of seized vehicles, id. at 1141; opening door of garage and removal of seized car after being told by mechanic that it was illegal to do so, tearing of seizure stickers from rental property and telling tenants that rental payments should be paid to defendant, not to IRS, Main, 598 F.2d at 1089–90; verbal threats to IRS agents after seizure, Owens (as noted in Spicer, 547 F.2d at 1231); breaking a bank window, removal of seizure seal on box, and removal of safe deposit box and contents from bank, Scolnick, 392 F.2d at 327.

Other cases have presented closer questions. In Spicer, a seized tug was repossessed when the owner removed it from its moorings and resumed his use of the tug for business (which took the tug permanently away from this harbor). 547 F.2d at 1232. In Harris, the IRS seized a car by placing warning stickers on it, and left the car on the street at Harris' place of business for later towing. After the agents' departure, Harris moved the car to his home address, where an IRS agent found it that afternoon at the back of Harris' driveway with stickers removed. 521 F.2d at 1091.

The Harris court held that any use of force constitutes a forcible rescue, and that the removal or destruction of warning stickers placed on the seized automobile

---

1. Sanders also contests one aspect of the first element—whether the Cadillac taken was in fact his and so lawfully seized—but this is a peripheral matter that we can dispose of rather summarily. Sanders argues that the Cadillac was not his but rather his son's, and so should not have been seized by the IRS for Sanders' non-payment of taxes. On cross-examination during trial, however, Sanders acknowledged that when he filed his bankruptcy petition on April 27, 1987, which was subsequent to the Cadillac's seizure on April 9, he had listed the Cadillac as his own.

comprised a use of force: "These stickers were the formal indication that the car had been seized. Their removal by force was sufficient to support a finding of forcible rescue." 521 F.2d at 1093. If we accepted this test, Sanders' conduct would clearly be covered. We find the logic of this test too narrow, however. More convincing is the *Spicer* rationale that forcible rescue should be defined as appropriation of an item "in a manner that defie[s] and frustrate[s] the warrant of seizure." 547 F.2d at 1232. In this sense, rescue is forcible when it is against the constructive will of the government, that is, when the rescue disrupts the government's possession in a situation where the government has lawfully asserted dominion and lawfully maintained custody.

■ This is only one prong of the definition of forcible rescue, however. We must also consider the scienter element. As the *Main* court holds under § 7212(b), the statute "represents a legislative determination that in the context of the enforcement of the tax laws, once property has been seized, the risk of disorder by violent recovery of the property should be avoided entirely and the one who claims the right to the property should pursue legal remedies." 598 F.2d at 1091. If one has good reason to believe that he had pursued his legal remedies to their successful conclusion, then his retrieval of seized property would not be self-help or "violent recovery." On this view of the matter, it would therefore be highly relevant to the issue of guilt that Sanders was told by his attorney that the necessary motion for recovery of the vehicles had been filed, and that Sanders then went to the garage and removed his cars without challenge. Whether Sanders removed the warning stickers from his car was relevant only as an indication of his state of mind.

There was evidence at trial that Sanders thought he had a right to recover his possessions. When the IRS re-seized Sanders' Cadillac, they found it parked in front of his home, not, as in *Hardaway*, 731 F.2d at 1140, in a field outside town. The IRS agent who talked with Sanders at this time testified that Sanders said that he was quite willing to answer questions because he had done nothing wrong; Sanders related that his attorney had told him he could take the cars and could ignore the warning stickers. As both Sanders and the National Guard mechanic testified, the mechanic said nothing to Sanders about not taking the battery. An IRS agent testified that Sanders' attorney told the agent that he had filed the motion for recovery of the cars.

■ Sanders claims that the court erroneously instructed the jury as to the elements of forcible rescue. This claim fails. The trial court instructed the jury that forcible rescue should be defined by whether "the defendant forcibly removed the property from custody, that is, he dispossessed the appropriate authorities of dominion and control over the property, and such act was done willfully." This definition is accurate as our discussion of the elements of force and criminal intent indicate.

■ Sanders also claims that the evidence failed to establish the necessary elements of the offense charged. This claim fails as well. The test on appellate review is whether there was evidence "sufficient for the jury to find beyond a reasonable doubt," *Owens*, 511 F.2d at 1206, that Sanders committed the crime alleged. There was sufficient evidence for the jury to convict; apparently, the jury did not find Sanders' testimony or demeanor credible, or believed the testimony of Gamble, Sanders' attorney, who testified that he did not tell Sanders either that the motion for release had been filed in bankruptcy court or that it was legal for him to recover his possessions while warning stickers remained attached.

■ Sanders' final contention, however, has merit and requires reversal. He claims, and we agree, that proffered testimony of his daughter which supported his defense of nonwillfulness was erroneously excluded. The daughter was unable to testify at trial because she was pregnant and overdue for the birth of her child. Her pre-trial deposition recounted a phone call

from attorney Gamble to Sanders, which she took in her father's absence. The message, according to her deposition, was that Sanders could go pick up his vehicle. Sanders testified that she relayed such a message to him. Sanders attempted to introduce this deposition to establish his state of mind and to impeach the testimony of Gamble.

The court refused to admit the deposition into evidence, originally holding that it was hearsay, but later excluding it as only cumulative, not probative. This was prejudicial error. Where the jury's determination of Sanders' guilt rested significantly on its evaluation of his state of mind when he recovered his possessions, independent testimony from Sanders' daughter that she in fact had told him that attorney Gamble said that it was legally appropriate to go pick up these possessions may have been decisive. This deposition might also have been crucial in coloring how the jury evaluated other evidence concerning Gamble's truthfulness. An IRS agent related that Gamble told him that the motion for recovery of the cars had been filed. Another witness testified that on at least five to ten occasions in the previous year, the attorney told persons in the bankruptcy court that he had filed bankruptcy motions for others while he in fact had not. Under the circumstances, the exclusion of the deposition cannot be treated as harmless error. We cannot say that it is " 'highly probable that the error did not affect the judgment,' " *United States v. Nyman*, 649 F.2d 208, 212 (4th Cir.1980) (quoting R. Traynor, *The Riddle of Harmless Error*, 34–35 (1976)).

REVERSED AND REMANDED FOR NEW TRIAL.