39 F.3d 1420
 John R. GASHO, Sr.; Sharon L. Gasho, Plaintiffs-Appellants,
v.
UNITED STATES of America; Northrop Worldwide Aircraft
Services, Inc., an Oklahoma corporation, et al.,
Defendants-Appellees.
John R. GASHO, Sr.; Sharon L. Gasho; Millardair, Ltd., a
Canadian corporation, Plaintiffs-Appellants,
v.
William L. BALL; Roger Mannhalter; John J. Howe, Jr.,
Defendants-Appellees.
 Nos. 92-16988, 93-15727.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 17, 1994.
Decided Nov. 2, 1994.
 
 Merwin D. Grant, Christine R. Taradash, and Maria Crimi Speth, Beus, Gilbert & Morrill, Phoenix, AZ, for plaintiffs-appellants.
 Barbara L. Herwig and Wendy M. Keats, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 Appeals from the United States District Court for the District of Arizona.
 Before: D.W. NELSON, BOOCHEVER and BEEZER, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 These cases involve the seizure of an aircraft and the arrest of its owners, John and Sharon Gasho, by the United States Customs Service. The Gashos filed false arrest and other tort claims against the United States, pursuant to the Federal Tort Claims Act (FTCA), 18 U.S.C. Secs. 1346(b), 2674. The district court dismissed the Gashos' action. The Gashos then filed a Bivens action against the Customs agents, claiming that the aircraft seizure and personal arrests violated their Fourth and Fifth Amendment rights. The district court dismissed the Bivens action pursuant to 28 U.S.C. Sec. 2676. We have jurisdiction over both of the Gashos' appeals pursuant to 28 U.S.C. Sec. 1291. We reverse in part, affirm in part and remand for further proceedings.
 
 
 2
 * John and Sharon Gasho own an aircraft restoration company in Tucson, Arizona. On June 24, 1988, the Gashos flew a McDonnell Douglas DC-3 aircraft to Scottsdale Municipal Airport in order to meet with John Zarcone, a Federal Aviation Administration (FAA) inspector. The Gashos were selling the aircraft to Millardair, Ltd., a Canadian corporation, and they wanted to terminate the United States registration of the aircraft before export.
 
 
 3
 At the airport, Zarcone issued the Gashos several documents, including a special flight authorization allowing the aircraft to be flown to the United States-Canada border with Canadian registry markings. The authorization stated that Canada would not issue a valid Canadian registration until the aircraft actually entered into Canada.[1] The Gashos and Zarcone removed the U.S. registration markings and affixed the Canadian markings to the aircraft. The Gashos then returned to their hotel room.
 
 
 4
 An air traffic controller at the airport noticed that the registration markings on the DC-3 had been changed after its arrival. He alerted William Gately, the Customs agent in charge. Gately dispatched Special Agents William Ball and Roger Mannhalter to investigate.[2] The agents confronted the Gashos at their hotel room. John Gasho explained that he obtained the Canadian registry markings from the aircraft's new owner, Millardair, and that an FAA inspector had assisted in changing the registration markings. He explained that the FAA inspector issued a special authorization permit, which was inside the aircraft, allowing the aircraft to be flown to Canada. Agent Ball began advising John Gasho of his Miranda rights. The Gashos then summoned their daughter, Pamela Vining, a Phoenix attorney, for legal counsel.
 
 
 5
 The agents, the Gashos and Vining went to the Scottsdale airfield. There, the Gashos showed the agents the special flight authorization allowing them to fly the aircraft with Canadian markings. While the document allowed the aircraft to fly with the Canadian markings, the agents decided that the document did not establish the validity of the Canadian markings. Zarcone could not be reached by telephone. The agents placed a lock on the aircraft's propeller, believing they had probable cause to seize the aircraft for the "knowing[ ] and willful[ ]" display of "false or misleading" markings, in violation of 49 U.S.C. App. Sec. 1472.[3]
 
 
 6
 After seizing the aircraft, the Customs agents gave permission to Sharon Gasho to enter the aircraft to remove personal belongings and the aircraft's radio. The Customs agents did not tell her that any items inside the aircraft were seized. Among the items she removed were the aircraft's logbooks. Sharon Gasho then exited the aircraft, carrying the items in a plastic bag. At that time, John Gasho and the Customs agents were standing on the tarmac near the aircraft. In the presence of the Customs agents, John Gasho called out to his wife and asked her whether she removed the logbooks. She replied, "Yes, I did." Sharon Gasho then placed the plastic grocery bag containing the logbooks and other personal belongings into Vining's automobile. It is undisputed that the agents did not protest or attempt to stop Sharon Gasho from removing the logbooks and placing them in the vehicle.[4] In a deposition, Agent Ball was cross-examined as follows:
 
 
 7
 Q. Did you stop her at that time?
 
 
 8
 A. No.
 
 
 9
 Q. Did you say anything to her at that time?
 
 
 10
 A. No.
 
 
 11
 Q. Did you protest in any way?
 
 
 12
 A. No.
 
 
 13
 Q. All right. What happened next?
 
 
 14
 A. Shortly thereafter we went inside the aviation center.
 
 
 15
 The subject of the logbooks was not raised until after the parties entered the Scottsdale Aviation Center to make photocopies of the FAA documents. Ball and the other agents then told the Gashos that the seizure of the aircraft included the logbooks and demanded that the Gashos return them. The Gashos refused. They told the agents that a warrant was required. The agents repeatedly warned the Gashos that they would be arrested if they refused to turn over the logbooks. The Gashos called the local police, but they refused to intervene. At Vining's request, the agents allowed Vining to meet with the Gashos in a private, glass-enclosed office. After several minutes, the agents sought entry to the office. Although there is a dispute over whether the Gashos refused to open the door, the agents entered with a key and arrested the Gashos. While the agents were handcuffing her parents, Vining retrieved the logbooks from her car and gave them to the Customs agents.
 
 
 16
 The Gashos were booked for violation of 18 U.S.C. Sec. 549, which forbids unlawful removal of property from Customs custody. During booking, an Assistant United States Attorney told Agent Mannhalter that his office would not prosecute the Gashos. Nevertheless, Agent Mannhalter's supervisor, John Howe, ordered Mannhalter to continue the booking and to tell the Gashos that charges would be filed. In October 1989, sixteen months after the arrests, the United States Attorney formally declined to prosecute the Gashos.
 
 
 17
 A few weeks after the seizure and the arrests, Millardair completed the Canadian registration for the aircraft. The United States Attorney declined to initiate forfeiture proceedings against the DC-3 and advised Customs to release the aircraft. The regional counsel for Customs agreed with the United States Attorney that the aircraft should be released but said the release should be conditioned upon the receipt of an agreement from the Gashos releasing Customs and its agents from all civil liability. Six months after it was seized, the aircraft finally was released to Millardair. No release of liability was executed by the appellants.
 
 
 18
 The Gashos filed suit against the United States under the FTCA, seeking damages for false arrest and false imprisonment, intentional infliction of emotional distress, and abuse of process.[5] The district court granted summary judgment to the government on the false arrest and imprisonment claims and the intentional infliction of emotional distress claim. By subsequent order, the district court dismissed the abuse of process claim for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).
 
 
 19
 Following the dismissal of the FTCA claims, the Gashos filed a Bivens action against Agents Ball and Mannhalter, and Howe, the agents' supervisor. The Gashos claimed that the agents arrested them without probable cause, violating their Fourth and Fifth Amendment rights. In addition, in a claim joined by Millardair, the Gashos contended that the agents seized the aircraft without probable cause or due process.
 
 
 20
 In support of their Bivens claims, the plaintiffs produced a deposition from a Customs Agent who testified that he deliberately avoided assisting in the arrest because he had a "bad feeling about the situation" and did not want to be involved. In addition, Customs Pilot David Kunz testified that Howe told him that the Gashos were arrested, in part, because the Gashos' defiance in refusing to turn over the logbooks "made us mad." Kunz, who took contemporaneous notes of the conversation, testified that Howe also told him that Customs was pursuing criminal proceedings against the Gashos in order to "protect ourselves in case of a lawsuit later."
 
 
 21
 The defendants moved to dismiss the Bivens claim pursuant to Fed.R.Civ.P. 12(b)(6) and also moved for summary judgment, arguing that 28 U.S.C. Sec. 2676 operates as a complete bar to the Bivens action and, alternatively, that the defendants were entitled to qualified immunity. The district court dismissed the claim, concluding that it was barred by 28 U.S.C. Sec. 2676.
 
 II
 
 22
 We first address whether the district court erred in granting summary judgment to the United States on the FTCA claims alleging false arrest and imprisonment. Summary judgment is reviewed de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992). Viewing the evidence in the light most favorable to the nonmoving party, we determine whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Gizoni v. Southwest Marine Inc., 909 F.2d 385, 387 (9th Cir.1990), aff'd, 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991).
 
 
 23
 Under the FTCA, the United States is liable for common law torts committed by federal employees within the scope of their federal employment. See 28 U.S.C. Secs. 1346(b), 2674. The FTCA allows liability for false arrest or false imprisonment when such torts are committed by federal law enforcement officers. 28 U.S.C. Sec. 2680(h). Liability is determined by the tort law of the state where the claim arose. Id.
 
 
 24
 Under Arizona law, probable cause is an absolute defense to a claim of false arrest and imprisonment. Hockett v. City of Tucson, 139 Ariz. 317, 320, 678 P.2d 502, 505 (Ct.App.1983). The defendant bears the burdens of production and persuasion for any defense. See In re Estate of Page, 177 Ariz. 84, 91, 865 P.2d 128, 135 (Ct.App.1993). Accordingly, as the party moving for summary judgment, the United States must show that there is no genuine issue as to probable cause and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 
 25
 The material facts and circumstances of the arrests are undisputed: Sharon Gasho removed logbooks from the seized aircraft after being given permission to enter the aircraft and remove personal belongings and the radio; Customs agents did not attempt to prevent her from removing the logbooks; the Customs agents did not demand the logbooks until after they had been placed in Vining's car, and the Gashos later refused to comply with the agents' request to turn over the logbooks because they believed the officers needed a warrant. In civil cases, the existence of probable cause is a question for the jury. McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir.1984). However, when there is no genuine issue of fact, summary judgment is appropriate if no reasonable jury could find an absence of probable cause under the facts. Id. In making the probable cause determination, we construe the evidence in the light most favorable to the party opposing summary judgment--in this case, the Gashos. See id.
 
 
 26
 Probable cause is more than mere suspicion. Probable cause exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability" that a crime was committed. United States v. Smith, 790 F.2d 789, 792 (9th Cir.1986). Because probable cause must be evaluated from the perspective of "prudent men, not legal technicians," Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949), an officer need not have probable cause for every element of the offense. United States v. Thornton, 710 F.2d 513, 515 (9th Cir.1983). However, when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred. Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 705 (9th Cir.1989).
 
 
 27
 The Gashos were arrested pursuant to 18 U.S.C. Sec. 549, which forbids the "unlawful remov[al]" of property under the control or custody of Customs. The United States conceded that no probable cause for the Gashos' arrests existed under 18 U.S.C. Sec. 549. The statute requires "felonious intent," see United States v. Slocum, 708 F.2d 587, 596 (11th Cir.1983), and the district court noted that there was no evidence that the Gashos had such intent. The district court held instead that the arrests were justified under either of two other statutes:[6] 18 U.S.C. Sec. 2233, which prohibits forcible rescue of seized property, or 18 U.S.C. Sec. 2232, which prohibits removal of property to prevent seizure.[7]A.
 
 
 28
 The Gashos argue that the Customs agents did not have probable cause to arrest the Gashos for violating Sec. 2233, the "forcible rescue" statute. Section 2233 applies to any person who
 
 
 29
 forcibly rescues, dispossesses, or attempts to rescue or dispossess any property, articles, or objects after the same shall have been taken, detained or seized by any officer or other person under the authority of any revenue law of the United States, or by any person authorized to make searches and seizures....
 
 
 30
 18 U.S.C. Sec. 2233 (emphasis added). As its plain language indicates, the "forcible rescue" statute is exclusively concerned with the rescue of property after it has been seized by an officer of the United States. United States v. Spicer, 547 F.2d 1228, 1233 (5th Cir.), cert. denied, 430 U.S. 987, 97 S.Ct. 1688, 52 L.Ed.2d 383 (1977). The offense of "forcible rescue" has three elements: (1) seizure of the property by the United States, (2) knowledge by the defendant that the property has been seized and that removal is unlawful, and (3) forcible and willful removal of the property from the dominion and control of the government. See United States v. Sanders, 862 F.2d 79, 83 (4th Cir.1988); cf. United States v. Hardaway, 731 F.2d 1138, 1140 (5th Cir.) (interpreting forcible rescue under analogous provision in Internal Revenue Code, 26 U.S.C. Sec. 7212(b)), cert. denied, 469 U.S. 865, 105 S.Ct. 206, 83 L.Ed.2d 137 (1984).
 
 
 31
 The last two elements require specific intent: the defendant must not merely intend to remove the property but also intend to frustrate a lawful seizure. See Spicer, 547 F.2d at 1232 (forcible rescue occurs when property is taken "with the purpose to use it in a manner that defie[s] and frustrate[s] the warrant of seizure.") When specific intent is an element of the alleged offense, "[p]art of the probable cause analysis must be whether the officers could believe that [the person arrested] had the necessary intent." Kennedy, 901 F.2d at 705. The agents must have reasonably believed that Sharon Gasho intended to steal the logbooks from Customs.[8]
 
 
 32
 It is fundamental that a person is not criminally responsible unless criminal intent accompanies the wrongful act. Morissette v. United States, 342 U.S. 246, 251, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952) (stating that a crime is the "concurrence of an evil-meaning mind with an evil-doing hand"). Consequently, to have probable cause to believe that a crime has been committed, an arresting officer would have to reasonably believe that Sharon Gasho intended to defy and frustrate the seizure at the time that she removed the logbooks.
 
 
 33
 Specific intent to frustrate seizure minimally requires that an actor know that the goods are seized. The actor cannot know that goods are seized unless the government gives notice of their seizure. See Sanders, 862 F.2d at 83 (seizure exists when the government has "lawfully asserted dominion and lawfully maintained custody" over the property).[9] In this case, an officer could not reasonably believe that Sharon Gasho had specific intent when she took the logbooks. While Customs gave notice of the aircraft's seizure by placing a lock on a propeller, Customs asserted no dominion and maintained no custody over the logbooks before Sharon Gasho boarded the aircraft. See id. On the contrary, Customs allowed Sharon Gasho to enter the aircraft specifically for the purpose of removing objects from inside. While Customs allowed her inside the aircraft only to retrieve "personal belongings" and the aircraft's radio, these instructions were insufficient notice that the logbooks were seized, as the logbooks are personal property. Absent notice of seizure, it was unreasonable to believe that Sharon Gasho knew the logbooks were seized or that their removal was forbidden when she took them. There was no probable cause to arrest Sharon Gasho under Sec. 2233. It follows that the Customs agents had no probable cause to arrest John Gasho, as he did not participate in removing the logbooks.
 
 
 34
 The United States argues that the Gashos were "continually and indisputably aware" that removal of the logbooks was forbidden, because logbooks are an "appurtenance" to an aircraft. We disagree. It is unreasonable to infer specific intent merely on the notion that the Gashos should have known that the logbooks were part of the aircraft.[10] See Phillips v. United States, 356 F.2d 297, 303 (9th Cir.1965) (only actual knowledge, not constructive knowledge, of invidious act allows an inference of specific intent), cert. denied, 384 U.S. 952, 86 S.Ct. 1573, 16 L.Ed.2d 548 (1966). Knowledge that the logbooks were seized as an appurtenance to the aircraft cannot be imputed as a matter of common sense. If the logbooks were seized as an appurtenance, it was incumbent upon the agents to inform Sharon Gasho of that fact before she entered the aircraft, either by physically securing the logbooks or by verbally informing her. They neglected to do so. Indeed, they said and did nothing even when she took the logbooks with their knowledge and announced to her husband in the agents' presence that she had removed the logbooks from the aircraft.
 
 
 35
 In short, probable cause for forcible rescue is lacking unless there is a "fair probability" that the person knew that removal of the goods was forbidden and took the goods with the intent to steal them. The facts and circumstances here did not give the agents probable cause to believe the Gashos had such knowledge or intent when Sharon Gasho took the logbooks.
 
 B.
 
 36
 The government alternatively argues that probable cause existed to arrest the Gashos under Sec. 2232, which prohibits persons from physically interfering with searches and seizures. Section 2232 provides:
 
 
 37
 (a) Physical interference with search.--Whoever, before, during, or after seizure of any property by any person authorized to make searches and seizures, in order to prevent the seizure or securing of any goods, wares, or merchandise by such person, staves, breaks, throws overboard, destroys, or removes the same, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 38
 18 U.S.C. Sec. 2232(a) (emphasis added).
 
 
 39
 In contrast to Sec. 2233, Sec. 2232 is concerned primarily with the destruction or removal of property before it is seized. See Spicer, 547 F.2d at 1233. An actor is liable only if he removes or destroys the property with the purpose of preventing seizure. See, e.g., United States v. Peterson, 812 F.2d 486 (9th Cir.1987) (defendant threw marijuana overboard and set ship on fire). An essential element of Sec. 2232 is that the defendant have the "specific intent" to prevent the seizure of the goods. United States v. Gibbons, 331 F.Supp. 970, 972 (D.Del.1971), aff'd., 463 F.2d 1201 (3d Cir.1972).
 
 
 40
 The specific intent inquiry for Sec. 2232 closely mirrors the inquiry under Sec. 2233. For an officer to reasonably believe that the actor intended to prevent seizure in violation of Sec. 2232, the facts and circumstances available to the officer must suggest that the actor had some notice that the goods were subject to imminent seizure. Such notice exists when the officer serves a search warrant or engages the defendant in "hot pursuit." See id.
 
 
 41
 Customs gave Sharon Gasho permission to enter the aircraft and remove personal belongings. It is undisputed that Sharon Gasho removed the logbooks from the seized aircraft, put the logbooks and other personal belongings in a plastic bag, and then placed the bag in her daughter's car. But the fact that she "removed" the logbooks does not establish probable cause under Sec. 2232, for the same reason that no probable cause existed under Sec. 2233: because the government gave no notice that they intended to seize the logbooks, the Customs agents had no reasonable basis to believe that Sharon Gasho knew that the removal of the logbooks was forbidden or that she intended to prevent their seizure at the time that she took them from the aircraft.
 
 
 42
 Eventually, the agents did give notice to the Gashos that they intended to seize the property. But the demand for the logbooks came only after Sharon Gasho placed the plastic bag containing the logbooks in Vining's car. As Agent Ball testified in his deposition, the agents did not demand the logbooks when they knew she was carrying them out of the aircraft. Only later, after the Gashos and the Customs agents entered the aviation center to photocopy the FAA documents, did Ball and the other agents finally tell the Gashos that the seizure of the aircraft included the logbooks and demand their return. The Gashos and Vining then refused to turn over the logbooks, believing the agents were required to obtain a warrant. Their refusal was passive; they did not attempt to drive Vining's vehicle away from the airport or otherwise physically interfere with the government's search or seizure. The Gashos only refused to consent to the warrantless seizure.
 
 
 43
 Although the refusal to turn over the logbooks clearly is not an act that falls within the prohibitions of either Sec. 2233 or Sec. 2232,[11] the government nevertheless argues that the Gashos' refusal provided probable cause for arrest under Sec. 2232. The point of the government's argument is that the Gashos' refusal to hand over the logbooks gave rise to a reasonable inference that they had the specific intent to prevent seizure at the time Sharon Gasho removed the logbooks from the aircraft. We disagree. A passive refusal to hand over property cannot be grounds for inferring criminal intent. The Fourth Amendment gives citizens the right to refuse to consent to warrantless searches and seizures. United States v. Prescott, 581 F.2d 1343, 1351 (9th Cir.1978). Consequently, the "passive refusal to consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing." Id. If a passive refusal to hand over property can give rise to an inference of specific intent under Sec. 2232, the right of citizens to withhold consent to warrantless searches or seizures would be threatened. An officer could use the threat of arrest as coercion to obtain consent to a warrantless search or seizure. "[A]n unfair and impermissible burden would be placed upon the assertion of a constitutional right and future consents would not be 'freely and voluntarily given.' " Id. (quoting Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)).[12] While we recognize that citizens have a lower expectation of privacy when searches involve plastic bags in automobiles rather than houses, see United States v. Mackey, 626 F.2d 684, 686-87 (9th Cir.1980), the citizen nevertheless retains the right to refuse consent to a warrantless search of the bag containing his personal effects, even if consent is given to search the vehicle. Cf. Florida v. Jimeno, 500 U.S. 248, 252, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents.").
 
 
 44
 Even if we were to permit officers to infer specific intent from a person's refusal to consent to a search, such an inference would be unreasonable in this case, under the totality of the circumstances: Customs agents provided no notice that the logbooks were seized, they allowed Sharon Gasho to board the aircraft for the specific purpose of removing items, she made no attempt to conceal her removal of the logbooks, and the agents knew she removed the books but did not immediately object. Indeed, some time passed before the agents asked for the logbooks. The passage of time between the removal of the logbooks and the Gashos' refusal to turn them over attenuates any inference of specific intent. Under these facts, Sharon Gasho's act of removing the logbooks from the aircraft does not necessarily evince any criminal purpose. She simply could have been removing her personal property, which Customs gave her permission to do. "Probable cause is lacking if the circumstances relied on are 'susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities.' " United States v. Moore, 483 F.2d 1361, 1363 (9th Cir.1973) (quoting United States v. Selby, 407 F.2d 241, 243 (9th Cir.1969)).
 
 
 45
 In summary, the Customs agents had no probable cause under either Sec. 2233 or Sec. 2232 to arrest the Gashos, because the agents had no reasonable basis to believe that Sharon Gasho knew that removal of the logbooks was forbidden or that she intended to frustrate or prevent their seizure when she carried them from the aircraft. The passive refusal to hand over property pursuant to a warrantless search or seizure is privileged conduct which cannot be the basis for inferring criminal intent. We reverse summary judgment on the FTCA claims of false arrest and imprisonment.
 
 III
 
 46
 The appellants contend that the district court erred when it granted summary judgment to the government on their claim of intentional infliction of emotional distress. We review summary judgment de novo. Jones, 968 F.2d at 940.
 
 
 47
 Under Arizona law, a plaintiff alleging the intentional infliction of emotional distress must plead and prove that: (1) the defendant's actions were extreme and outrageous, (2) the defendants either intended to cause emotional distress or acted in reckless disregard of that result, and (3) severe emotional distress in fact occurred. Ford v. Revlon, Inc., 153 Ariz. 38, 734 P.2d 580 (1987) (en banc).
 
 
 48
 The Gashos based their emotional distress claim on three acts by the United States: the seizure of the aircraft, the arrests, and the threat of continuing prosecution. Each act must be discussed separately, as the FTCA exempts certain government activities from the FTCA's waiver of sovereign immunity.
 
 A.
 
 49
 We first address whether the seizure of the aircraft is conduct exempted from FTCA liability. The Gashos claim that the Customs agents seized the aircraft with either the intent to inflict severe emotional distress, or with the careless disregard for that result. The United States contends that the emotional distress claim based on the seizure is barred by the "plain terms" of the Customs detention exception in 28 U.S.C. Sec. 2680(c). A jurisdictional bar, Sec. 2680(c) exempts the United States from liability for "any claim arising in respect of ... the detention of any goods or merchandise by any officer of customs." 28 U.S.C. Sec. 2680(c).
 
 
 50
 The Gashos assert that Sec. 2680(c) does not preclude them from relying on the seizure as a basis for their emotional distress tort claim. After Sec. 2680(c) was enacted, Congress added an amendment to Sec. 2680(h), permitting recovery for various intentional torts when committed by an "investigative or law enforcement officer," including the intentional infliction of emotional distress. 28 U.S.C. Sec. 2680(h); Sheehan v. United States, 896 F.2d 1168, 1169, amended on other grounds, 917 F.2d 424 (9th Cir.1990). The Gashos contend that the intentional torts remedy in Sec. 2680(h) amended the Customs exception in Sec. 2680(c), exempting only negligent torts by Customs officials.
 
 
 51
 We addressed a similar question in Wright v. United States, 719 F.2d 1032, 1035-36 (9th Cir.1983). Wright involved an alleged intentional tort by an Internal Revenue Service agent arising out of his testimony before a grand jury. Besides exempting claims that arise with respect to Customs seizures, Sec. 2680(c) also exempts claims that arise with respect to "the assessment or collection of any tax" by IRS agents. We stated that Secs. 2680(c) and 2680(h) must be interpreted in a manner that reconciles them, without doing violence to either. Id. at 1036. Under the facts in Wright, we held that the IRS agent was not immune from liability, insofar as his alleged tortious conduct did not constitute an "assessment" or "collection" of a tax, within the strict meaning of those words. See id. at 1035-36.
 
 
 52
 We read Wright as requiring the United States to first demonstrate that the Customs or IRS agent's tortious conduct falls within the scope of activities exempted in Sec. 2680(c). If such a showing is made, the claim is barred. If the government fails to show that the tortious conduct is exempt, the plaintiff's claim is not barred, assuming the plaintiff demonstrates that an "investigative or law enforcement officer" committed the intentional tort.
 
 
 53
 In the Gashos' case, the government clearly met its burden. The actions of the Customs agents, the seizure and detention of the aircraft, are precisely the kinds of acts that Congress exempted from liability in Sec. 2680(c). The Gashos cannot base their emotional distress claim on the seizure, even if it was without probable cause.
 
 
 54
 Other courts interpreting the interplay of Sec. 2680(h) and the FTCA exceptions have applied a similar analysis. In Gray v. Bell, 712 F.2d 490, 507-08 (D.C.Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984) the court addressed whether a plaintiff could pursue an intentional tort claim against a law enforcement officer, pursuant to Sec. 2680(h), when the tortious conduct fell within the "discretionary function" exemption of Sec. 2680(a). The court held that to maintain an FTCA claim for an intentional tort under Sec. 2680(h), a plaintiff must first clear the "discretionary function" hurdle. Id.; see also Pooler v. United States, 787 F.2d 868, 872-73 (3d Cir.), cert. denied, 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986). Contra Sutton v. United States, 819 F.2d 1289, 1297 (5th Cir.1987).
 
 
 55
 We recognize that our holding effectively bars any remedy for intentional torts with respect to seizures by Customs. But statutes waiving the sovereign immunity of the United States must be "construed strictly in favor of the sovereign." McMahon v. United States, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). When strictly construed in light of Sec. 2680(c), the waiver of immunity in Sec. 2680(h) applies only to tortious conduct not involving the seizure and detention of goods by Customs. Our holding furthers Congress' intent in creating the Customs exemption: ensuring that Customs activities, as a class, should not be disrupted by threat of suit. See Kosak v. United States, 465 U.S. 848, 858, 104 S.Ct. 1519, 1525-26, 79 L.Ed.2d 860 (1984). Thus, the Gashos' emotional distress claim is barred, insofar as it relies on injuries stemming from Customs' seizure of the aircraft.
 
 B.
 
 56
 We next address whether the arrests of the Gashos can form the basis for an emotional distress claim under the FTCA.
 
 
 57
 As the government concedes, the Customs exception in Sec. 2680(c) does not bar an intentional tort claim arising out of arrests by Customs agents, as the exception applies only to the detention of goods and merchandise, not persons. The district court granted summary judgment to the government on the ground that an emotional distress claim must fail when the mental anguish arises entirely from another tort--in this case, false arrest. See Restatement (Second) of Torts, Sec. 47, cmt. a.
 
 
 58
 The district court's holding was in error. The Restatement only says that consequential mental anguish from a separate tort does not establish a claim for intentional infliction of emotional distress. If the Gashos can prove that the arresting officers arrested them with the intent of inflicting emotional distress, the Gashos may assert both false arrest and emotional distress claims. See id. at Sec. 46; Garus v. Rose Acre Farms, Inc., 839 F.Supp. 563, 569 (N.D.Ind.1993) (finding that the Restatement rejected old rule that mental anguish was merely "parasitic" to the host cause of action and not a separate tort). In short, if the arrests were motivated by malice, the Gashos are entitled to assert a separate tort claim based on the emotional distress resulting from the arrests.
 
 
 59
 To prove malicious intent, the Gashos relied on testimony from a Customs pilot, David Kunz. According to Kunz, John Howe, the Customs supervisor, admitted that he arrested the Gashos because they "made us mad." The Gashos also introduced deposition testimony from a Customs agent who testified that he deliberately avoided participating in the arrest because he had a "bad feeling about the situation" and did not want to be involved. The Gashos also allege that they were "paraded" through the airport lobby in handcuffs. These facts and circumstances, combined with the lack of probable cause for the arrest, are sufficient to create a genuine issue of material fact on the issue of malice.
 
 C.
 
 60
 We next consider whether the pursuit of criminal proceedings may support an emotional distress claim under the FTCA.
 
 
 61
 The Gashos contend that the Customs agents intentionally inflicted emotional distress by telling them that charges would be pursued against them.[13] The Gashos contend they "lived with the fear of a criminal prosecution for a full 16 months when Customs knew that the Government never intended to pursue the matter." Only later, after the civil suit was filed, did the Gashos learn that an Assistant United States Attorney had declined to prosecute them on the day they were arrested. To prove malicious intent, the Gashos produced a deposition from Kunz, the Customs pilot. Kunz testified that John Howe, the Customs supervisor, had told him that Customs was pursuing prosecution against the Gashos in order to "protect ourselves in case of a lawsuit later."
 
 
 62
 The government argues that the agents' conduct in preparing the case for prosecution is immune from liability under Sec. 2680(a), the "discretionary function" exception. The exception exempts the United States from liability under the FTCA for any claim
 
 
 63
 based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
 
 
 64
 28 U.S.C. Sec. 2680(a). If a defendant can show that the tortious conduct involves a "discretionary function," a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under Sec. 2680(h). See Wright, 719 F.2d at 1035; Gray, 712 F.2d at 507-08.
 
 
 65
 To determine whether a defendant's conduct is of a discretionary nature, we must look to the nature of the alleged wrongful conduct. Weissich v. United States, 4 F.3d 810, 812 (9th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2705, 129 L.Ed.2d 833 (1994). Even if the conduct is discretionary, the conduct is protected by Sec. 2680(a) only if it implements social, economic or political policy. Id. If the agents had "room ... to make independent policy judgments," the "discretionary function" exception protects them from liability. Id. at 814.
 
 
 66
 The Gashos contend that once the Assistant United States Attorney informed Customs that his office would not prosecute the Gashos, the agents were foreclosed from pursuing prosecution further. Essentially, their argument is that Customs no longer had "room" to decide whether to prosecute, because the Assistant United States Attorney had already exercised a policy judgment. Our opinion in Wright appears to support this view. We stated that an agent's conduct in implementing the decision to prosecute is not immune as a discretionary function. "Unlike the decision to prosecute, an agent's conduct, both before and after that decision is made, is susceptible to judicial evaluation." Wright, 719 F.2d at 1035.
 
 
 67
 Our holding in Wright relied on a distinction between the "planning level" and the "operational level" of decisionmaking. This dichotomy assumed that decisions made by actors at the "operational level" were not immune from liability. See Driscoll v. United States, 525 F.2d 136, 138 (9th Cir.1975). The Supreme Court and this court subsequently rejected this dichotomy as "specious." Begay v. United States, 768 F.2d 1059, 1062 n. 2 (9th Cir.1985) (citing United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). Rather, an act is shielded from liability if judicial second-guessing would interfere with the federal employee's exercise of independent policy judgments. Mitchell v. United States, 787 F.2d 466, 468 (9th Cir.1986), cert. denied, 484 U.S. 856, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987).
 
 
 68
 In this case, the alleged tortious conduct involved the continued investigation and pursuit of criminal charges after an Assistant United States Attorney had indicated that charges would not be filed. We need not decide whether investigations after a final decision are immune from FTCA liability, as the government's evidence in this case establishes as a matter of law that the Assistant United States Attorney's decision not to prosecute was not final. Nearly a year after the arrests, the United States Attorney advised the Gashos' attorney that "[w]e have neither made a decision to prosecute nor to decline prosecution ... [t]he decision is still being reviewed." (emphsais added). There is no genuine issue of fact, because the statement by the Assistant United States Attorney does not contradict the United States Attorney's letter. The statement, issued on the day of the arrests without the benefit of any investigative file, manifestly was a preliminary judgment.[14] Because the evidence establishes as a matter of law that the decision to prosecute was not final, the conduct of the agents in pursuing prosecution is immune. That the conduct of the agents may be tortious or motivated by something other than law enforcement is beside the point, as governmental immunity is preserved "whether or not the discretion involved be abused." 28 U.S.C. Sec. 2680(a); Johnson v. United States, 949 F.2d 332, 340 (10th Cir.1991).
 
 
 69
 In summary, the dismissal of the intentional infliction of emotional distress claim is justified to the extent the claim rests solely on circumstances involving seizure of the aircraft and prosecutorial decisions, conduct which falls squarely under FTCA exceptions. However, the Gashos have introduced evidence establishing a genuine issue whether the arrests were motivated by malice. The agents' conduct during the arrest is not entitled to FTCA immunity. We reverse summary judgment on the Gashos' emotional distress claim to the extent it is based on the arrests.
 
 IV
 
 70
 The appellants raised an abuse of process claim based on the seizure of the aircraft and the subsequent forfeiture process. The district court dismissed the claim for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The court explained that such a tort under Arizona law must be predicated on misuse of a court's powers, and no judicial process was instituted in this case. A Rule 12(b)(6) dismissal presents a question of law, which we review de novo. Oscar v. University Students Co-operative Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).
 
 
 71
 The Gashos contend that the district court misconstrued Arizona law. They also assert that the word "process" is not restricted to the narrow sense of that term. They contend that a claim for abuse of process may lie when the process is administrative. See, e.g., Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240 (9th Cir.1982) (there is "no reason" to distinguish administrative process from judicial process), cert. denied, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).
 
 
 72
 We need not decide whether, under Arizona law, an abuse of process claim may be based on an administrative abuse. The tortious acts alleged by the Gashos involved detention of goods and merchandise by Customs and, therefore, the claim is barred under the FTCA's exemption for Customs detentions contained in 28 U.S.C. Sec. 2680(c). See Wright, 719 F.2d at 1035-36. We affirm the district court's dismissal of the abuse of process claim.
 
 V
 
 73
 We now address the Bivens action alleging that Agents Ball, Mannhalter and Howe violated the Gashos' constitutional rights when they seized the aircraft and arrested the Gashos.[15] We resolve two questions: whether the Bivens claims are barred by 28 U.S.C. Sec. 2676, and whether the agents are entitled to qualified immunity from liability.
 
 A.
 
 74
 The Gashos argue that the district court erred when it dismissed the Bivens claims pursuant to 28 U.S.C. Sec. 2676. The district court held that under Sec. 2676, the existence of the prior judgment in the FTCA action barred the Bivens claim. Because this issue requires statutory interpretation, we review the district court's decision de novo. Kreines v. United States, 959 F.2d 834, 836 (9th Cir.1992).
 
 Section 2676 states that
 
 75
 [t]he judgment in an [FTCA] action ... shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.
 
 
 76
 28 U.S.C. Sec. 2676. The district court read the word "judgment" in Sec. 2676 as broadly applying to all judgments, both against and in favor of the government. Because a judgment in favor of the government earlier was granted in the Gashos' FTCA action,[16] the district court dismissed the Gashos' Bivens action.
 
 
 77
 The Gashos argue that the word "judgment" in section 2676 is "ambiguous" and "vague" about whether the proviso applies to all judgments regardless of outcome or whether it applies only to judgments against the United States. The Gashos urge us to rely on legislative history as a means of interpreting Congress' intent. They contend Congress intended only to prevent more than one satisfaction of a claim. See Hearings Before the House Committee on the Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess. 90 (1942). They argue that section 2676 does not bar a plaintiff from filing another action when the prior action was adjudged in favor of the United States. In essence, the Gashos argue that the quality of an FTCA judgment must determine whether or not a subsequent Bivens claim on the same conduct is barred.
 
 
 78
 Neither this circuit nor any other circuit has squarely decided this specific question. The Gashos contend that our opinion in Kreines v. United States, 959 F.2d 834, 838 (9th Cir.1992) settles the issue. In Kreines, we stated: "The statutory bar [in section 2676] was conceived by Congress primarily to prevent dual recoveries arising from additional, subsequent litigation." Id. (emphasis added). Kreines' broad language arguably supports the Gashos' contention that an action is barred only when the plaintiff has recovered in the judgment. However, the holding in Kreines was narrowly confined to its facts. In that case, the plaintiff had filed an FTCA claim and a Bivens claim in the same action. Judgment was entered first in the Bivens claim, and the judgment in the FTCA claim followed a few months later. Kreines viewed the claims as "contemporaneous" and therefore held that it was "free, in this narrow context, to consider the possibility that the quality of the FTCA judgment may have a bearing on its effect on contemporaneous judgments." (emphasis added). Relying on legislative history, Kreines concluded that the bar to any later "action" was to prevent "dual recoveries" in separate litigation. Id. The court therefore held that an FTCA judgment in favor of the government did not bar the Bivens claim when the judgments are "contemporaneous" and part of the same action. Id. In the Gashos' case, the Bivens claims were in an action entirely apart from the action containing the FTCA claims. Limited by its facts, Kreines is not controlling.
 
 
 79
 We are not persuaded that Congress intended to permit a claimant to have a second chance after losing his FTCA action. The first and best guide of Congress' intent is the plain language of the statute. United States v. American Trucking Associations, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063-64, 84 L.Ed. 1345 (1940). The statute speaks of "judgment" and suggests no distinction between judgments favorable and judgments unfavorable to the government. The language is not "ambiguous" or "vague." See Leaman v. Ohio Dept. of Mental Retardation, 825 F.2d 946 (6th Cir.1987) (interpreting Ohio Court of Claims Act and stating in dictum that similar provision in section 2676 provides that "even adverse judgments" in favor of the government bar subsequent recovery against employees), cert. denied, 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 882 (1988).
 
 
 80
 The legislative history does not contradict our interpretation of the statute. Kreines' analysis of legislative history unearthed two concerns by Congress: the prevention of dual recoveries and the prevention of multiple lawsuits. Id.; see Hearings on H.R. 5373 and H.R. 6463, supra, at 9 ("If the government has satisfied a claim which is made on account of a collision between a truck carrying mail and a private car, that should, in our judgment, be the end of it.") (statement of Francis Shea, Assistant Attorney General). The risk of dual recovery is absent here because the Gashos did not prevail on their FTCA claim. The prevention of dual recovery, however, is not the only purpose of the statute. Congress also was concerned about the government's ability to marshal the manpower and finances to defend subsequent suits against its employees. One witness testified that multiple suits imposed a "very substantial burden" on the government. Id. This suggests that Congress never intended to draw a distinction based on whether the government prevailed or not. We therefore hold that any FTCA judgment, regardless of its outcome, bars a subsequent Bivens action on the same conduct that was at issue in the prior judgment.
 
 
 81
 Our interpretation of Sec. 2676 serves the interests of judicial economy. Plaintiffs contemplating both a Bivens claim and an FTCA claim will be encouraged to pursue their claims concurrently in the same action, instead of in separate actions. This will foster more efficient settlement of claims, since the evidence and proof in FTCA and Bivens claims often overlap.
 
 
 82
 The Bivens claims based on the seizure of the aircraft are barred. Because we have affirmed the district court's judgment in favor of the United States in the FTCA claims involving the seizure of the aircraft, that prior judgment precludes any subsequent Bivens claim based on the seizure.[17] See 28 U.S.C. Sec. 2676 (prior judgments bar subsequent claims "by reason of the same subject matter"). Because we have reversed the district court's summary judgment on the FTCA claim involving the arrests, a prior "judgment" no longer bars the subsequent Bivens claim based on the arrests. The Gashos thus are permitted to pursue either the Bivens claim or FTCA claim, or both claims. If they pursue both remedies in separate actions, they may secure judgments on both claims only if the Bivens judgment is entered first. See Ting v. United States, 927 F.2d 1504, 1513 n. 10 (9th Cir.1991).
 
 B.
 
 83
 The defendants argue that they are entitled to qualified immunity from damages caused by the arrests. We review qualified immunity de novo. Baker v. Racansky, 887 F.2d 183, 185 (9th Cir.1989).
 
 
 84
 The doctrine of qualified immunity assumes that police officers do not knowingly violate the law. An officer thus is presumed to be immune from any damages caused by his constitutional violation. Elder v. Holloway, 975 F.2d 1388, 1392 (9th Cir.1991), rev'd on other grounds, --- U.S. ----, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). To overcome this presumption, a plaintiff must show that the officer's conduct was "so egregious that any reasonable person would have recognized a constitutional violation." Id. at 1394 (quoting Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir.1985)).
 
 
 85
 We employ a two-step inquiry to determine whether a reasonable person would have recognized that a constitutional right was being violated. Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). The plaintiff first must show that the constitutional right is clearly established. Elder, 975 F.2d at 1392. If the plaintiff makes that showing, the burden shifts to the defendant to show that a reasonable police officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right. Morgan v. Woessner, 997 F.2d 1244, 1260 (9th Cir.1993), cert. dismissed, --- U.S. ----, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994).
 
 
 86
 The Gashos contend that the Customs agents arrested them in retaliation for refusing to turn over the logbooks. The Gashos produced evidence that Agent John Howe, who ordered the arrests, later told another Customs official that the Gashos were arrested because the Gashos' refusal to turn over the logbooks "made us mad." The Gashos argue that an arrest for their refusal to turn over the logbooks violated their Fourth Amendment rights.
 
 
 87
 The Fourth Amendment right to be free from arrests without probable cause is clearly established. Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 706 (9th Cir.1989). Probable cause is obviously lacking when the arrest is motivated purely by a desire to retaliate against a person who verbally challenges the authority to effect a seizure or arrest. See Houston v. Hill, 482 U.S. 451, 462-63, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir.1990). Similarly, probable cause is lacking when an officer arrests a person for refusing to consent to a warrantless search or seizure. See United States v. Prescott, 581 F.2d 1343, 1351 (9th Cir.1978) (The "passive refusal to consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing."). It is clearly established that a person's Fourth Amendment rights are violated if the sole basis for his arrest is his challenge to the officer's authority absent a warrant.
 
 
 88
 Our inquiry now turns to whether a reasonable officer could have believed that the arrest of the Gashos was lawful, in light of the clearly established law and the information the arresting officers possessed. See Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987). Our prior determination that the arrests lacked probable cause is not necessarily determinative. The agents may still be entitled to immunity even if they mistakenly believed there was probable cause to arrest the Gashos, if they could have reasonably believed that their actions were lawful. See id.
 
 
 89
 The defendants have failed to demonstrate that a reasonable officer could have believed, as a matter of law, that the Gasho's arrests were lawful. Our conclusion rests on the issue of specific intent. The agents argued that they had probable cause to believe that the Gashos intended to frustrate or prevent seizure because: (1) the Gashos were "indisputably and continually aware" that the logbooks were an appurtenance to the aircraft, and (2) the Gashos refused to turn over the logbooks in response to the agents' demands for them. As to the first ground, the agents had no facts to support their belief that the Gashos knew that the logbooks are an appurtenance to the aircraft. Their belief was based on mere supposition. In light of the paucity of facts allowing an inference of specific intent, a reasonable officer would have known that the arrests were without probable cause. As to the second ground, a reasonable officer, in light of the clearly established law, would have known that the Gashos' passive refusal to turn over the logbooks was privileged conduct which could not serve as a basis for finding criminal intent. The agents are not entitled to qualified immunity. Cf. Duran, 904 F.2d at 1377 (officer not immune because criticism of police is not a crime, absent evidence of disorderly conduct).
 
 VI
 
 90
 The judgment of the district court is affirmed in part and reversed in part. We affirm summary judgment on the FTCA and Bivens claims based on the seizure of the aircraft. We reverse the dismissal of the FTCA claim based on the intentional infliction of emotional distress. We reverse summary judgment on the FTCA and Bivens claims based on the arrests. The case is remanded for further proceedings consistent with this opinion.
 
 
 91
 REVERSED in part, AFFIRMED in part and REMANDED.
 
 
 
 [1]
 Millardair, a co-appellant, had applied to Canadian authorities for a Canadian registration and had been assigned a Canadian number; however, official registration was to be contingent upon the aircraft's entry into Canada
 
 
 [2]
 In a deposition, Gately testified that he also telephoned Corporal Karol Waverfield of the Royal Canadian Mounted Police. He said Waverfield told him the registration markings were invalid. Waverfield gave a different account in a deposition. He testified that Lorraine Gray of the Canadian Transport Ministry told him that an application for Canadian registry was pending and that the numbers could not be used until the application was approved. Waverfield testified that he relayed this same information to Gately or his representative. There is also a dispute regarding when the information was relayed to Gately. The United States contends Gately knew about the information before the seizure of the aircraft. The Gashos, however, point to testimony by Waverfield and Gray indicating that Gately did not receive the information until after the seizure
 
 
 [3]
 The section prohibits persons from "knowingly and willfully" displaying registration markings on an aircraft that are "false or misleading" as to the nationality or registration of the aircraft. 49 U.S.C.App. Sec. 1472(b)(1)(H)
 
 
 [4]
 Although the district court's opinion stated that the parties "disagree" on this point, in the same opinion the court later noted that the agents did not immediately react upon learning that the logbooks had been removed from the aircraft. See Order Granting Motion for Summary Judgment, p 17
 
 
 [5]
 The Gashos also filed a claim against Northrop Worldwide Aircraft Services, Inc. for damage incurred to the aircraft while it was in Customs custody
 
 
 [6]
 We agree with the district court that a lack of probable cause under 18 U.S.C. Sec. 549 does not preclude the United States from asserting the defense. Probable cause may still exist for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested. See United States v. Rambo, 789 F.2d 1289, 1294 (8th Cir.1986). It is immaterial that the officer did not have in mind the specific charge upon which the arrest can be justified. Id
 The Gashos urge us to follow Santiago v. Fenton, 891 F.2d 373, 385-86 (1st Cir.1989). Santiago held that if a suspect is arrested for the wrong reason, the arrest cannot be justified later by the fact that the officer might have had another good reason. Id. at 385. Santiago is easily distinguished on its facts. The officer in Santiago attempted to justify the arrest by pointing to different conduct by the arrestee. Here, as in Rambo, the United States is citing a closely related offense for the same conduct by the arrestee.
 
 
 [7]
 Only the facts and circumstances relating to the arrests are relevant to the inquiry into whether probable cause existed under either Sec. 2233 or Sec. 2232. The alleged unlawfulness of the seizure of the aircraft is immaterial to whether there was probable cause to arrest the Gashos, because there is no evidence of "bad faith, unreasonable force, or provocative conduct" in connection with the seizure. See United States v. Garcia, 516 F.2d 318, 320 (9th Cir.) ("We will not apply any self-help right to immunize suspicious conduct from consideration in determining whether there is probable cause to arrest or to search."), cert. denied, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975); see also United States v. Span, 970 F.2d 573, 580 (9th Cir.1992) (stating that the right to interfere physically with "unlawful" police action is "not triggered by absence of probable cause, but rather by the officer's bad faith or provocative conduct"--where it appears that the "officer is engaged in a 'frolic of his own' ") (quoting United States v. Martinez, 465 F.2d 79, 82 (2d Cir.1972)), cert. denied, --- U.S. ----, 113 S.Ct. 1283, 122 L.Ed.2d 676 (1993)
 If, for example, the officers knew their seizure of the aircraft was without probable cause, the officers would have acted in bad faith and any physical interference to that seizure would be immune. Normally, the existence of bad faith would be a jury question. However, there is no genuine issue here because the evidence put forth by the appellants is insufficient to lead a reasonable jury to conclude that the officers seized the aircraft in "bad faith." The Gashos speculate that Supervisor John Howe, who had been newly promoted as supervisor, ordered the seizure to "score points after his promotion." This could not support a jury finding that Howe was engaged in a "frolic of his own."
 
 
 [8]
 The Supreme Court has insisted that probable cause analysis cannot rest on "rigid legal rules" but rather must rest on a "commonsense" approach that is "practical" and "nontechnical." Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). We are mindful of this approach. In requiring probable cause for specific intent when specific intent is an element of the crime, we are not subjecting our probable cause analysis to "rigid legal rules." We believe it is a matter of common sense that before arresting a person for taking property in the custody of Customs, an officer should reasonably believe that the person intends to steal
 
 
 [9]
 Cf. United States v. Harris, 521 F.2d 1089, 1093 (7th Cir.1975) (warning stickers on seized automobile were "formal indication that the car had been seized"); United States v. Main, 598 F.2d 1086 (7th Cir.) (verbal notice that vehicle was seized and tearing of seizure stickers from rental property), cert. denied, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979); United States v. Scolnick, 392 F.2d 320 (3d Cir.) (breaking of bank window, removal of seizure seal on box, and removal of safe deposit box and contents from bank), cert. denied, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968)
 
 
 [10]
 The government points to deposition testimony by John Gasho that he was aware that logbooks are typically transferred with the aircraft's title upon sale. This testimony is not probative, for two reasons. First, it does not establish that John Gasho knew that the logbooks transferred with the aircraft upon seizure. Second, it is irrelevant to determining the facts and circumstances known by the agents at the time of arrest
 
 
 [11]
 The Gashos' refusal later to hand over the logbooks is not "forcible rescue" under Sec. 2233, as the logbooks were not in the government's possession during the refusal. See Sanders, 862 F.2d at 83 (rescue is forcible when the rescue disrupts the government's possession). Absent some physical act of force, the mere refusal to cooperate is not "forcible." See United States v. Cunningham, 509 F.2d 961, 963 (D.C.Cir.1975) (per curiam) (to be forcible, an act must be accompanied by "some measure of presently applied force") (interpreting 18 U.S.C. Sec. 111, which prohibits forcible interference with federal officers)
 Nor is the mere refusal to turn over the logbooks a prohibited act under Sec. 2232. The statute mentions only acts which destroy or remove property. Thus, a person is liable only if he destroys or removes property. Our construction of the statute is consistent with the cardinal rule that penal statutes must be strictly construed. United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). Under our construction, the Gashos' passive refusal is not a prohibited act, as it did not physically interfere with the seizure by destroying or removing the property. If the agents believed that they had probable cause to seize the logbooks as an appurtenance to the aircraft and that exigent circumstances excused the lack of a warrant, they simply could have seized the logbooks from Vining's automobile. The Gashos' passive resistance to the search and seizure posed no physical interference to the agents' law enforcement objectives. If the seizure was justified, the Gashos' consent to effect the seizure was hardly required.
 
 
 [12]
 We recognize that a citizen has no right to resist a search or seizure pursuant to a warrant. Bumper, 391 U.S. at 550, 88 S.Ct. at 1792. Warrantless searches are another matter. In warrantless searches, there is a presumption the officer has no right to enter and search the property, though the lack of a warrant later may be excused under one of various exceptions if the officer has probable cause. See Camara v. Municipal Court, 387 U.S. 523, 528-29, 87 S.Ct. 1727, 1730-31, 18 L.Ed.2d 930 (1967). The passive refusal to cooperate in such searches is not criminal, as citizens cannot fairly be expected to surrender their rights simply on the word of officers, nor can they fairly be expected to ascertain on their own whether the absence of a warrant is excused. Prescott, 581 F.2d at 1350-51. This right is limited to passive refusals to consent or cooperate. We are not confronted with the situation where a citizen resorts to physical resistance that interferes with a search or seizure. See United States v. Flores, 887 F.2d 543, 545 (5th Cir.1989)
 
 
 [13]
 The Gashos cannot pursue a claim for malicious prosecution because an essential element is the actual commencement of a criminal prosecution, which did not occur in this case. See Slade v. City of Phoenix, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975). Instead, the Gashos allege intentional infliction of emotional distress
 
 
 [14]
 The government argues that "an Assistant United States Attorney seldom has the final say as to whether such prosecutions will be accepted." That may or may not be true, depending on how much the authority the United States Attorney has delegated to his assistants. We choose not to make any such generalized assumption
 
 
 [15]
 See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Under Bivens, as interpreted in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) and Davis v. Passman, 442 U.S. 228, 245-48, 99 S.Ct. 2264, 2277-79, 60 L.Ed.2d 846 (1979), a victim of a constitutional violation by a federal agent is entitled to recover money damages from the agent when there is neither a special factor counseling hesitation nor an equally effective alternative remedy
 
 
 [16]
 The district court granted summary judgment on the Gashos' FTCA claims alleging false arrest and emotional distress, and dismissed their abuse of process claim for failure to state a claim
 
 
 [17]
 We reject the appellants' argument that the dismissal of the abuse of process claim for failure to state a claim is not a "judgment" on the merits under 28 U.S.C. Sec. 2676. Cf. Federated Dep't Stores Inc. v. Moitie, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981) (Rule 12(b)(6) dismissal is final for purposes of res judicata). In any case, the claim is barred by the Customs exception of 28 U.S.C. Sec. 2680(c)